# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re** <br><br> TIMOTHY JAMES TAYLOR <br> and JOLENE N. TAYLOR, <br> **Debtors.** | **Bankruptcy Case** <br> **No. 08-00526-JDP** |

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

    Joseph M. Meier, COSHO HUMPHREY, Boise, Idaho, Attorney for Debtors.

    Janice D. Newell, Boise, Idaho, Attorney for creditor Ada County.

    Kathleen A. McCallister, American Falls, Idaho, Chapter 13 Trustee.

## Introduction

On March 26, 2008, Debtors Timothy and Jolene Taylor (collectively "Debtors") filed a joint petition for relief under chapter 13[1] of the

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

MEMORANDUM OF DECISION - 1

Bankruptcy Code.  Two weeks later, on April 9, 2008, Debtors filed their chapter 13 plan and scheduled a confirmation hearing.  Prior to that hearing, on May 22, 2008, chapter 13 trustee Kathleen A. McCallister ("Trustee") moved to dismiss the case.  In support of her motion, Trustee cited numerous deficiencies in Debtors' proposed plan and noted that Debtors were not eligible for chapter 13 relief because their noncontingent, liquidated debts exceeded the debt limits in § 109(e).  Docket No. 32.

On June 3, 2008, the Court continued a hearing on Trustee's motion to dismiss, and directed the parties to submit briefs and exchange exhibits and witness lists prior to the next hearing.  Debtors filed their list of intended witnesses and exhibits, Docket No. 44, and a brief outlining their legal argument, Docket No. 47.  Trustee filed a list of proposed exhibits and intended witnesses, Docket No. 43, but did not file a brief outlining her legal arguments.  However, Trustee's submission did identify two cases which purportedly support her argument.  Counsel for Ada County,

MEMORANDUM OF DECISION - 2

a creditor in this case, submitted a brief in support of Trustee's motion to dismiss. Docket No. 46.[2]

On June 16, 2008, the Court resumed its hearing on Trustee's motion. Ada County's exhibits 1 - 6, and Debtors' exhibits 101 - 110 were each offered and admitted by stipulation. Following the testimony of Debtor Timothy Taylor, the Court heard arguments of counsel, and took the issues under advisement. After considering the record, the arguments of the parties, and the relevant legal authorities, this Memorandum constitutes the Court's findings of fact and conclusions of law and resolves the motion. Rules 7052, 9014.

**Facts**

Debtor Timothy Taylor is an owner and managing member of several corporations and limited liability companies.[3] Of these entities,

---

[2] Counsel for Ada County also filed a supplemental brief on June 16, 2008 which identified additional case law. Docket No. 48.

[3] Debtors' Statement of Financial Affairs identifies five corporations in which Debtors hold ownership interests and seven limited liability companies of which Debtors are members. Most of these entities are involved with real estate development and real estate investment.

MEMORANDUM OF DECISION - 3

only two are relevant to this discussion: Raftis Capital, Inc. ("Raftis") and Silvertip Communities, Inc. ("Silvertip"). Raftis and Silvertip are both engaged in real estate development. Debtor is the president and holds a 100% ownership interest in Raftis; he holds a 50.05% ownership interest in, and is vice president of, Silvertip.

Over the last several years, Raftis and Silvertip obtained several loans from various lenders to finance real estate development projects. In connection with those loans, Debtor Timothy Taylor executed five different personal guaranties. Those guaranties consist of the following:

1.  A guaranty of multiple promissory notes executed by Raftis in favor of lender Washington Trust Bank (the "Bank"). Ex. 101.

2.  Two separate guaranties of the debts of Silvertip, each in the amount of $100,000 plus interest, executed in favor of lender MLLB Investments, LLP. Exs. 104, 105.[4]

---

[4] These guaranties and their underlying notes were executed on April 20, 2007 and May 22, 2007, respectively. Although Silvertip has not yet defaulted under either note, on May 13, 2008, MLLB Investments, LLP filed a proof of claim in the amount of $232,500 based on these two guaranties. Ex. 3, Claim No. 10.

MEMORANDUM OF DECISION - 4

    3.    A guaranty of the debt of Silvertip, in the amount of $200,000 plus interest, executed in favor of lender Jeffrey T. Welker. Ex. 106.

    4.    A guaranty of the debts of Raftis and Silvertip, in the amount of $3,300,000 plus interest, executed in favor of lender Hopkins Growth Fund, LLC ("Hopkins"). Ex. 107.

As indicated, Raftis received several loans from the Bank. For each loan, Raftis agreed to repay the entire principal balance at the conclusion of the loan's term, and in the meantime, to make monthly payments of interest. A failure to make any payment when due constituted a default under the notes, and if any payment was not made within 30 days of the due date, a late charge could be assessed by the lender. If Raftis defaulted, the Bank was entitled to accelerate and demand payment of the entire unpaid principal balance and all accrued and unpaid interest.

Debtor Timothy Taylor testified that over the terms of these loans, Raftis rarely, if ever, made timely monthly interest payments to the Bank. However, Raftis usually made the payment during the thirty-day grace period, such that Raftis was not charged a late fee. When Debtors filed

MEMORANDUM OF DECISION - 5

their bankruptcy petition on March 26, 2008, Raftis had not made the interest payments on these notes that were due on March 5, but the 30-day grace period had not yet expired. On March 28, 2008, the Bank accelerated the entire balance, and demanded that Raftis make payment in the amount of $1,151,972.74. Ex. 103.

The Hopkins loan was similar in terms to the Bank's loans in that it also required monthly interest payments, with the outstanding principal balance due at the conclusion of the loan's term. In addition, failure to make the interest payments when due constituted an event of default. However, two terms of the Hopkins' loan differed slightly from those of the Bank's loans: monthly interest payments were due on the 21st day of each month (as opposed to the 5th for the Banks' loans); and only a ten-day grace period for payments was provided before a late charge could be assessed.

The original amount of the Hopkins' loan was $3,300,000. When Debtors filed their petition, Raftis and Silvertip were delinquent in the monthly interest payments due to Hopkins. Although the corporations

MEMORANDUM OF DECISION - 6

had made a partial payment in January, the amounts due for February and March 2008 had not been paid. At the time of the hearing on June 16, 2008, Hopkins had not yet accelerated the outstanding balance or made demand for payment.

## Discussion

Trustee's motion cites multiple grounds justifying dismissal of Debtors' case. However, the parties' submissions and arguments at the hearing effectively narrowed the focus of Trustee's motion to the issue of whether Debtors are eligible under the debt limits for relief under chapter 13.

Congress has imposed eligibility requirements limiting individuals' access to relief under chapter 13 of the Bankruptcy Code:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $336,900 and noncontingent, liquidated secured debts of less than $1,010,650 . . . may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e).

MEMORANDUM OF DECISION - 7

Not all of a debtor's debts are considered when determining whether he or she is eligible for chapter 13 relief. Under the statute, debts that are contingent or unliquidated are expressly excluded from the eligibility computation. *Nicholes v. Johnny Appleseed of Washington (In re Nicholes)*, 184 B.R. 82, 88 (9th Cir B.A.P. 1995).

Congress defined some, but not all, of the terms used in § 109(e). For example, a "debt" is defined to mean liability on a claim.[5] 11 U.S.C. § 101(12). However, neither "noncontingent" nor "liquidated" are expressly defined in the Code. To discern the meaning of these terms, the Court looks to the case law for guidance.

In the Ninth Circuit, a contingent debt is "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor." *Fostvedt v. Dow (In re Fostvedt)*, 823 F.2d 305, 306 (9th Cir. 1987)

---

[5] A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A). Although "claim" is used in the definition of "debt," the terms are coextensive. *Quintana v. IRS (In re Quintana)*, 107 B.R. 234, 237 (9th Cir. B.A.P. 1989), *aff'd*, 915 F.2d 513 (9th Cir. 1990).

MEMORANDUM OF DECISION - 8

(citations omitted). And a liquidated debt is one that is "subject to 'ready determination and precision in computation of the amount due.'" *Id.* (quoting *Sylvester v. Dow Jones and Co., Inc. (In re Sylvester)*, 19 B.R. 671, 673 (9th Cir. B.A.P. 1982)).

In their schedules, Debtors list the five guaranties described above as contingent and unliquidated claims of an "unknown" amount.[6] Docket No. 1. However, at the hearing, Debtors conceded that the amount due on each of the debts is readily capable of computation, and therefore the debts are liquidated for the purpose of § 109(e). The sole issue to be decided by this Court, therefore, is whether the guaranteed debts are also "noncontingent" for purposes of determining Debtors' eligibility to be chapter 13 debtors.

Debtors argue that, on the date the bankruptcy petition was filed, any extrinsic events that would trigger their liability under the guaranties had not yet occurred. Debtors identify these critical extrinsic events as the

---

[6] The guaranty in favor of Welker was originally listed in Schedule F as noncontingent. However, Debtors have since amended this schedule to show this debt as contingent. Docket No. 45.

MEMORANDUM OF DECISION - 9

declaration of default by the various creditors, and the lenders' election to accelerate the amounts due under the notes.

Trustee disagrees. She argues that Debtors became liable on the debts the moment Raftis and Silvertip defaulted on payments under the underlying notes. Trustee's position is the correct one.

Debtors concede that, when they filed for bankruptcy protection, Raftis and Silvertip had not timely paid some of the required monthly interest payments on the Hopkins and Bank notes.[7] Debtor contends, however, that these small payment defaults did not trigger their individual liability under the guaranties for the entire outstanding balance due on the various notes. Rather, Debtors assert that for the entire balance to become noncontingent, the lenders must have declared Raftis and Silvertip in default and accelerated the total balance in accordance with the respective notes prior to the time Debtors filed their petition. Since that

---

[7] The total amount of interest due on the Bank's and Hopkins' notes at the time Debtors filed their bankruptcy petition was $6,658.65 and $83,067.41, respectively. *See* Exs. 103, 109.

MEMORANDUM OF DECISION - 10

had not occurred on March 26, 2008[8], Debtors insist that the debts, or at least the balance which had not yet been accelerated, should be considered contingent, and therefore excluded from the eligibility computation under § 109(e).

As explained below, Debtors' argument lacks merit.

### A.

With the exception of the Welker guaranty,[9] the terms of each of the loan payment guaranties at issue here were absolute and unconditional. An absolute guaranty is an "unconditional undertaking on the part of the guarantor that he will pay the debt or perform the obligation immediately upon the debtor's default without any necessity to first exhaust the principal . . . ." *Commercial Credit Corp. v. Chisholm Bros. Farm Equip. Co.*,

---

[8] On March 28, 2008, two days after Debtors filed their bankruptcy petition, Bank declared Raftis in default of its obligations under the notes and accelerated the balance due. Ex. 103. According to the testimony of Debtor Timothy Taylor, at the time of the hearing, neither Welker nor Hopkins had yet made demand upon Silvertip, Raftis, or Debtors for payment.

[9] The Welker guaranty consists of a handwritten notation next to the signature line on the Silvertip promissory note. The notation, in its entirety, reads, "I personally guarantee this note", followed by Debtor Timothy Taylor's signature. While the Court does not doubt the enforceability of this guaranty, it need not examine the extent of Debtor's liability under these circumstances.

MEMORANDUM OF DECISION - 11

525 P.2d 976, 979 (Idaho 1974). Thus, the only condition precedent to Debtors' liability under the guaranties is a default by Raftis and Silvertip, the original obligors, under their respective notes. *See Krommenhoek v. Gugino (In re Pfankuch)*, 08.3 I.B.C.R. __ (Bankr. D. Idaho, July 15, 2008) (concluding that the guarantors' liability arose immediately upon the default of the principal obligor and not upon the creditor's later demand for payment).

The Bank notes required Raftis to make regular interest payments on the 5th day of each month. A failure by Raftis to make timely payment is an event of default under the notes. Ex. 102. On March 5, 2008, payments of $919.85 and $5,738.80 were due under the respective Bank notes. It is undisputed that Raftis had failed to make those payments. Thus, on March 6, 2008, Raftis was in default of its obligations under the notes, and Debtors became liable for the full amount of the Bank's notes pursuant to the terms of their absolute guaranty.

Debtors argue that on the date the petition was filed, the only amount technically due to the Bank was $6,658.65, because the outstanding

MEMORANDUM OF DECISION - 12

principal balance had not yet been accelerated. Although only $6,658.65 may have been "payable" on that date, under the terms of their absolute and unconditional guaranty, Debtors were "liable" for the entire amount of the debt. That the Bank did not make a demand for payment until March 28, 2008 is of no moment. As this Court recently explained, a demand for payment is not essential to the existence of liability for a guaranteed debt. *In re Pfankuch*, 08.3 I.B.C.R. __, citing *In re Wilson*, 9 B.R. 723, 725 (Bankr. E.D.N.Y. 1981). Debtors were liable for the entire outstanding principal balance and accrued interest and late fees the moment Raftis defaulted on its obligation.

The Bank filed an unsecured proof of claim in the bankruptcy case for $1,152,432.75. Ex. 3, Claim No. 9.[10] This figure represents the outstanding principal, interest, and late charges and fees for two of Bank's notes. Debtors' schedules list $23,645.23 in other noncontingent, liquidated, unsecured debt. When the Bank's claim is added to these

---

[10] In addition to the unsecured portion, the Bank's proof of claim listed $210,124.34 in secured debt. Ex. 3, Claim No. 9.

MEMORANDUM OF DECISION - 13

debts, the total amount of Debtor's noncontingent, liquidated, unsecured debt is over three times the $336,900 limit in § 109(e).

B.

Raftis and Silvertip also owed money to Hopkins, another debt which Debtors guaranteed. A Hopkins statement for March 2008 showed interest payments which were due in January, February, and March 2008 totaling $83,067.41, which neither Raftis nor Silvertip had paid. Like the Bank notes, the companies' failure to pay any amount owing under the Hopkins' note when due constituted an event of default. Ex. 108. Hence, when Raftis and Silvertip failed to make these payments, Debtors became liable under the terms of their absolute guaranty to Hopkins.

This debt is different in one respect, however, than the Bank debt, because the Hopkins guaranty was secured by several pieces of real property, and Debtors' ownership interest in a separate limited liability company. On this record, it is difficult for the Court to determine the exact

MEMORANDUM OF DECISION - 14

amount of Debtors' liability to Hopkins as of the petition date.  Hopkins has not filed a proof of claim in Debtors' bankruptcy case.[11]

However, Debtors' liability under the terms of their guaranty of the Hopkins debt encompasses both the outstanding principal as well as interest and late fees.  Since the original loan to Raftis and Silvertip from Hopkins was for $3,300,000, the total amount of Debtors' liability will presumably exceed this amount when interest and late fees are added to it.  Debtors scheduled $634,290.06 in other noncontingent, liquidated, secured debt.  When the debt to Hopkins is added to this amount, Debtors' total noncontingent, liquidated, secured debt greatly eclipse the $1,010,650 limit in § 109(e).[12]

---

[11] The last day to file claims is August 4, 2008.

[12] Of course, to the extent that any of the Hopkins debt is unsecured, this merely exacerbates Debtors' predicament in exceeding the unsecured debt limit.  Moreover, since the amounts due to the Bank and Hopkins render Debtors ineligible for chapter 13 relief, the Court need not analyze the impact of the Debtors' guaranty of the MLLB Investments loan.

MEMORANDUM OF DECISION - 15

**Conclusion**

Since they unconditionally guaranteed these debts, Debtors' liability for amounts due to Hopkins and Bank must be included in calculating the total amount of Debtors' noncontingent, liquidated debt on bankruptcy day.[13]  As a result, Debtors are not eligible for chapter 13 relief because the amount of their noncontingent, liquidated debts exceed the limits in § 109(e) for both unsecured and secured debt.  A separate order granting Trustee's motion to dismiss this case will be entered.

Dated: July 25, 2008

Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[13]  This Court and others have consistently held that debts arising from a debtor's personal guaranty of corporate debt are included in the eligibility computation under § 109(e).  *In re Brown*, 250 B.R. 382, 386 (Bankr. D. Idaho 2000) ("the Court concludes that the debts owed to [a bank] under Debtors' guarantees of the corporate debt are properly characterized unsecured debt in Debtors' individual Chapter 13 case for purposes of determining their eligibility for relief under § 109(e)."); *see also, In re Enriquez*, 315 B.R. 112, 122 (N.D. Cal. 2004) (liability arising from personal guaranty of corporate debt included in eligibility computation under § 109(e)); *In re Hatzenbuehler*, 282 B.R. 828, 834 (Bankr. N.D.Tex. 2002) ("If a debt is owed on the date of the filing of the petition and is liquidated and not contingent, it must be counted in analyzing a debtor's eligibility for chapter 13.").

MEMORANDUM OF DECISION - 16